UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| JOHN WILBANKS, JR.,<br><br>      Plaintiff,<br><br>v.<br><br>SERGEANT JAY HOLLOWAY, and DEPUTY MICHAEL YARBROUGH,<br><br>      Defendants. | Civil Action No.:<br><br>**Demand for Jury Trial** |

# COMPLAINT

Plaintiff John Wilbanks, Jr., through his undersigned counsel, brings this lawsuit against Defendants Sergeant Jay Holloway and Deputy Michael Yarbrough for violation of his Fourth Amendment rights during arrest and for false imprisonment under Georgia law. In support, Mr. Wilbanks alleges:

## Jurisdiction and Venue

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Mr. Wilbanks brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the Fourth Amendment to the U.S. Constitution.

3. Venue is proper in this district under 28 U.S.C. § 1391(b), this being the district where the claims arose and where Defendants conducts business.

## Parties

4. Plaintiff John Wilbanks, Jr. resides in Coweta County, Georgia and is otherwise *sui juris*.

5. Upon information and belief, Defendant Sergeant Jay Holloway resides in Coweta County, Georgia and is otherwise *sui juris*. At all times material to allegations herein, Sergeant Holloway was a deputy with the Coweta County Sheriff's Office. At all times material to the allegations herein, Sergeant Holloway was acting under color of state law. Sergeant Holloway is being sued in his individual capacity.

6. Upon information and belief, Defendant Deputy Michael Yarbrough resides in Coweta County, Georgia and is otherwise *sui juris*. At all times material to allegations herein, Deputy Yarbrough was a deputy with the Coweta County Sheriff's Office. At all times material to the allegations herein, Deputy Yarbrough was acting under color of state law. Deputy Yarbrough is being sued in his individual capacity.

## Factual Allegations

7. On June 14, 2023, Defendants were dispatched to Mr. Wilbanks's home in Senoia, Georgia concerning a dispute between Mr. Wilbanks and his neighbors involving his neighbor's construction of a fence and the neighbors' claim that Mr. Wilbanks had damaged a section of their fence.

8. When Defendants arrived on scene, they met with Mr. Wilbanks's neighbors, who discussed the alleged fence damage and showed Defendants videos they claim depicted Mr. Wilbanks damaging a section of their fence. They also advised Defendants that Mr. Wilbanks, according to them, claimed he knew the sheriff, a judge, and multiple investigators.

9. While discussing the case outside, Defendants agreed that if there was a criminal charge, it would only rise to the level of a misdemeanor. The alleged offense—damage to a section of the fence—was not committed within Defendants' presence or immediate knowledge.

10. After speaking with Mr. Wilbanks's neighbors, Defendants walked over to Mr. Wilbanks's home.

11. While walking over, Sergeant Holloway told Deputy Yarbrough that he thought Mr. Wilbanks was damaging the fence "maliciously" and that "I feel like [Mr. Wilbanks] needs to go, would you agree?" Deputy Yarbrough responded in the affirmative.

12. The Defendants knocked on Mr. Wilbanks's door and he stepped out of his home. He told Defendants he was not doing too well and that he had filed a civil lawsuit against his neighbors for building a fence on his property.

13. In response, Sergeant Holloway stated "we're not here about all of that."

14. Mr. Wilbanks and his wife then asked "what are you here about," to which Sergeant Holloway responded, "you hitting the fence," which he explained he saw on video.

15. Mr. Wilbanks and his wife laughed; he denied the claim; and he asked to see the video.

16. While Deputy Yarbrough wrote in his report that he then showed Mr. Wilbanks the video and that Mr. Wilbanks responded that his neighbor "does videography for a living and that he would be able to easily recreate that video to show [Mr. Wilbanks] hitting the fence," neither he nor Sergeant Holloway showed the video to Mr. Wilbanks and Mr. Wilbanks did not make that statement.

17. Instead, in response to Mr. Wilbanks asking to see the video, Sergeant Holloway asked for Mr. Wilbanks's identification, which he provided.

18. Sergeant Holloway then said, "you've been warned not to hit the fence," to which Mr. Wilbanks responded, "I didn't hit the fence."

19. Having decided that Mr. Wilbanks "need[ed] to go," Sergeant Holloway told Mr. Wilbanks to turn around and put his hands behind his back. When asked what the charge was, Sergeant Holloway responded "criminal damage."

20. Mr. Wilbanks was charged with violating O.C.G.A. § 16-7-21, criminal trespass with property damage, a misdemeanor offense.

21. At the time of the arrest, neither Sergeant Holloway nor Deputy Yarbrough possessed an arrest warrant for Mr. Wilbanks.

22. Sergeant Holloway then approached Mr. Wilbanks and Mr. Wilbanks complied with his orders. Sergeant Holloway placed handcuffs on Mr. Wilbanks with his hands behind his back.

23. Deputy Yarbrough then walked Mr. Wilbanks to the patrol car while Sergeant Holloway spoke to Mr. Wilbanks's family.

24. Several minutes later, Sergeant Holloway approached the patrol car, where Deputy Yarbrough was with Mr. Wilbanks.

25. Deputy Yarbrough was shining his flashlight on Mr. Wilbanks's hands where he had placed a second set of handcuffs on Mr. Wilbanks to increase the distance between his arms. When Deputy Yarbrough approached, Mr. Wilbanks informed Defendants that the handcuffs were "tearing [his] wrists up."



5

26. As Mr. Wilbanks positioned himself in the squad car he asked Defendants "can you guys put these in the front, I can't do this with this seat like this."

27. He then said, "I can't do it; this is tearing my wrists up." He repeated that phrase.

28. Mr. Wilbanks is a large man, who had difficulty getting into the squad car and whose size made it difficult to move in the cramped back seat.

29. Deputy Yarbrough looked at Mr. Wilbanks's wrists and Mr. Wilbanks explained that the handcuffs were "tight," particularly on his right wrist and it was "tearing his wrist up."

30. Mr. Wilbanks shouted to his wife "it's all right, they're going to have a lawsuit against them."

31. Deputy Yarbrough asked Mr. Wilbanks to get out of the patrol car and then applied a third set of handcuffs to increase the distance between Mr. Wilbanks' arms, while retaining the handcuffs behind Mr. Wilbanks's back.

32. Mr. Wilbanks went to get back in the patrol car but then told Defendants again that the right cuff was "digging right in" to his wrist.

33. Deputy Yarbrough told Mr. Wilbanks "just don't move your hands, all right."

34. Mr. Wilbanks shouted "Oh, my god" as he got back in the car, "Oh, my god, I can't do this."

35. The Defendants then slammed the car door.

36. It was hot inside the squad car. At some point Defendants opened the door and Mr. Wilbanks spoke to his family. He was in the parked squad car for about 15 minutes.

37. Deputy Yarbrough returned to the vehicle and drove Mr. Wilbanks to the jail. The ride was around 20 minutes, and Mr. Wilbanks repeatedly told Deputy Yarbrough that his wrist area was in immense pain and that he needed medical attention. He explained that something was wrong. But Deputy Yarbrough never responded to Mr. Wilbanks's pleas.

38. When Deputy Yarbrough arrived at the jail, Mr. Wilbanks repeated to him that he had immense pain in his wrist area. He pleaded with Deputy Yarbrough to remove his handcuffs or loosen them. Deputy Yarbrough did not.

39. While Mr. Wilbanks waited in booking to be processed, he stood complaining to the booking agent and Deputy Yarbrough that he needed medical attention for his wrist. The two of them laughed at Mr. Wilbanks.

40. Mr. Wilbanks was then placed in a cell and the handcuffs were finally removed. He was in handcuffs in excruciating pain for more than an hour.

41. His wrists were swollen and there was an indentation on his wrists.

42. Mr. Wilbanks was jailed for about three hours and then released to go home.

43. At home he iced his swollen wrists, but after not being able to stand the pain any longer, he sought medical attention. While both wrists hurt, Mr. Wilbanks was experiencing burning, numbness, and tingling in his right wrist. He was given pain medication and referred to an orthopedic surgeon.

44. Mr. Wilbanks, who had never had any pain in his hands or wrists before, was told by his orthopedist that he suffered from tenosynovitis of the right radial styloid requiring surgery. Mr. Wilbanks underwent surgery, but he still experiences pain and difficulty using his right arm and wrist.



## COUNT I
### Excessive Force under the Fourth Amendment
### (as to both Defendants)

Plaintiff John Wilbanks, Jr. repeats and re-alleges paragraphs 1 through 44 above, as if fully set forth herein and further alleges:

45.     Defendants, each acting under color of state law, deprived and violated Mr. Wilbanks's federally secured constitutional rights including his right to be free from excessive force.

46.     Specifically, Sergeant Holloway, who did not have an arrest warrant or observe any criminal conduct in his presence, violated the Fourth Amendment by applying handcuffs on Mr. Wilbanks, which was undertaken too tightly and by leaving them that way for an unreasonable amount of time.

47.     Further, Deputy Yarbrough, who did not apply the handcuffs initially, violated the Fourth Amendment when, confronted with cries of pain and complaints about excruciating pain, applied additional handcuffs to increase the distance between Mr. Wilbanks's arms but did not loosen the handcuffs on his wrists or remove them within a reasonable time.

48.     Defendants' respective acts and/or omissions inflicted gratuitous and substantial injury on Mr. Wilbanks, while Mr. Wilbanks demonstrated compliance and obedience during his arrest and booking.

49. As a direct and proximate result of the respective acts and/or omissions of Defendants, which were performed under color of state law and in violation of Mr. Wilbanks's rights, Mr. Wilbanks suffered extreme emotional, mental, and psychological injury; physical pain, embarrassment, humiliation, anguish, and disgrace; and economic damages, including medical expenses. The injuries will continue to occur in the future.

50. Mr. Wilbanks has retained legal counsel to represent him in this matter to whom he must pay a reasonable attorney's fee.

## COUNT II
### Failure to Intervene Under the Fourth Amendment
### (against Sergeant Holloway)

Plaintiff John Wilbanks repeats and re-alleges paragraphs 1 through 44 above, as if fully set forth herein and further alleges:

51. Mr. Wilbanks is entitled to relief against Sergeant Holloway for his failure to intervene.

52. Sergeant Holloway, while acting under color of state law, unlawfully and without justification violated the Fourth Amendment when he failed, while acting under color of state law, to adjust Mr. Wilbanks's handcuffs after Deputy Yarbrough added additional sets of handcuffs to increase the distance between Mr. Wilbanks's arms. Sergeant Holloway failed to take any action despite Mr. Wilbanks's repeated pleas for help and expression of pain. Specifically, while on

the scene, Sergeant Holloway witnessed Mr. Wilbanks express pain in his wrists on multiple occasions, but he did not take any steps to address the issue.

53.     As a direct and proximate result of the acts and/or omissions of Sergeant Holloway, which were performed under color of state law and in violation of Mr. Wilbanks's rights, Mr. Wilbanks suffered extreme emotional, mental, and psychological injury; physical pain, embarrassment, humiliation, anguish, and disgrace; and economic damages, including medical expenses. The injuries will continue to occur in the future.

54.     Mr. Wilbanks has retained legal counsel to represent him in this matter to whom he must pay a reasonable attorney's fee.

## COUNT III
### Failure to Intervene Under the Fourth Amendment
### (against Deputy Yarbrough)

Plaintiff John Wilbanks repeats and re-alleges paragraphs 1 through 44 above, as if fully set forth herein and further alleges:

55.     Mr. Wilbanks is entitled to relief against Deputy Yarbrough for his failure to intervene.

56.     Deputy Yarbrough, while acting under color of state law, unlawfully and without justification violated the Fourth Amendment when he failed, while acting under color of state law, to intervene to prevent Sergeant Holloway from effectuating an arrest and handcuffing Mr. Wilbanks despite lacking an arrest

warrant or the exigency exceptions to the warrant requirement prescribed by Georgia law. Sergeant Holloway failed to take any action despite knowing that Sergeant Holloway was not permitted to arrest or handcuff Mr. Wilbanks under controlling law and allowed him to be handcuffed in a manner which inflicted serious pain on his wrists. Indeed, Deputy Yarbrough acquiesced to Sergeant Holloway's declaration that Mr. Wilbanks "need[ed] to go."

57. As a direct and proximate result of the acts and/or omissions of Deputy Yarbrough, which were performed under color of state law and in violation of Mr. Wilbanks's rights, Mr. Wilbanks suffered extreme emotional, mental, and psychological injury; physical pain, embarrassment, humiliation, anguish, and disgrace; and economic damages, including medical expenses. The injuries will continue to occur in the future.

58. Mr. Wilbanks has retained legal counsel to represent him in this matter to whom he must pay a reasonable attorney's fee.

## COUNT IV
**False Imprisonment Under Georgia Law
(against both Defendants)**

Plaintiff John Wilbanks repeats and re-alleges paragraphs 1 through 44 above, as if fully set forth herein and further alleges:

59. Defendants unlawfully detained Mr. Wilbanks, depriving him of his personal liberty in violation of Georgia law.

60.   Specifically, Defendants arrested, handcuffed, and detained Mr. Wilbanks for several hours.

61.   Defendants undertook such acts despite lacking a warrant to render an arrest for violating O.C.G.A. § 16-7-21, criminal trespass with property damage, a misdemeanor offense.

62.   Defendants undertook such acts despite lacking any of the exigent circumstances available under O.C.G.A. § 17-4-20(a).

63.   Defendants undertook these acts with the deliberate intent of harming Mr. Wilbanks or committing a wrongful act.

64.   Sergeant Holloway deliberately declared, and confirmed his subordinate Deputy Yarbrough acquiesced, that he would arrest and detain Mr. Wilbanks despite lacking lawful authority to do so.

65.   In turn, Deputy Yarbrough predicated part of factual support for the arrest on events that never occurred—him showing Mr. Wilbanks the video and Mr. Wilbanks responding that the neighbor likely fabricated it.

66.   Further, once secured, Defendants failed to take steps to ensure that Mr. Wilbanks's severe pain in his wrists was remedied. Indeed, Deputy Yarbrough laughed at Mr. Wilbanks when he was in pain and refused to release or loosen his handcuffs despite repeated complaints.

67. As a direct and proximate result of the acts and/or omissions of the Defendants, which were performed under color of state law and in violation of Mr. Wilbanks's rights, Mr. Wilbanks suffered extreme emotional, mental, and psychological injury; physical pain, embarrassment, humiliation, anguish, and disgrace; and economic damages, including medical expenses. The injuries will continue to occur in the future.

68. Mr. Wilbanks has retained legal counsel to represent him in this matter to whom he must pay a reasonable attorney's fee.

## Prayer for Relief

Plaintiff John Wilbanks, Jr. respectfully requests that the Court enter judgment in his favor and against Defendants on all counts and award against each Defendant:

    A. compensatory damages;

    B. punitive damages;

    C. attorney's fees and costs; and

    D. such further relief the Court deems just and appropriate.

## Jury Demand

Plaintiff John Wilbanks, Jr. demands a trial by jury pursuant to Rule 38(b) on all issues so triable.

Dated: June 5, 2025

Respectfully submitted,

**James M. Slater**
James M. Slater
Georgia Bar No. 169869

SLATER LEGAL PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, Georgia 30345
(404) 458-7283
james@slater.legal